**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| Kole Akinola<br><br>           Movant–Defendant<br><br>   v.<br><br>United States of America<br><br>           Respondent–Plaintiff | Civ. No. 04-2757 (DRD) |

Kole Akinola            **O P I N I O N**
\# 437058
Southern State Correctional Facility
P.O. Box 150
Delmont, NJ 08313
<u>Pro Se</u> Petitioner

Christopher J. Christie
United States Attorney
  By: John Gay
     Assistant U.S. Attorney
970 Broad Street
Suite 700
Newark, New Jersey 07102

**DEBEVOISE, Senior District Judge**

     Movant, Kole Akinola, filed this motion for relief from federal custody pursuant to 28

U.S.C. § 2255.  Akinola's grounds for this motion are: (1) He received ineffective counsel in his

pre-trial and post-conviction proceedings; (2) His guilty plea was involuntarily entered under

duress because his detention was illegal; and (3) He pled guilty to information without a valid

waiver of indictment as required by the Fed. R. Crim. P. 7(b), and the Fifth Amendment to the

U.S. Constitution.  For the reasons set forth below, this motion is denied, and the action will be dismissed without issuance of a certificate of appealability.

## STATEMENT OF FACTS

A federal grand jury returned an indictment charging that from on or about December 20, 1999 through on or about May 19, 2000, Kole Akinola did knowingly and wilfully conspire and agree with others to execute a scheme and artifice to defraud financial institutions Summit Bank and Fleet Bank by means of fraudulent pretenses, representations and promises contrary to Title 18, U.S.C. § 1344.

The substance of the alleged conspiracy was that on or about February 2, 2000, Kole Akinola cashed a check made payable to an individual, "W.B.," in the amount of $622.51, drawn upon a Summit Bank account in the name of "U.L.E.C.," a business entity, in violation of 18 U.S.C. § 371, and that on or about May 19, 2000, co-conspirator Ricky Boyd cashed a check made payable to an individual, "W.H.," in the amount of $698.47, drawn upon a Fleet Bank account in the name of "P.M.I.", a business entity, in violation of 18 U.S.C. § 371.

## PROCEDURAL HISTORY

On May 25, 2001, Akinola had his initial appearance before the Magistrate Judge and was informed of his rights.  He was represented at that time by a Federal Public Defender, Stacey Biancamanno.  Ms. Biancamanno was later replaced by Timothy McInnis, who represented Akinola at his January 9, 2002, Rule 11 change of plea hearing.

At that time, Akinola waived his right to indictment by grand jury and pled guilty to a one

count information charging him with conspiracy to commit bank fraud in violation of 18 U.S.C. § 1344.  On April 8, 2002, Akinola was sentenced to time served and three years of supervised release.  Akinola was also ordered to pay restitution in the amount of $46,249.25 and a special assessment fee of $100.

Akinola filed a timely notice of appeal.  On April 16, 2003, the Court of Appeals affirmed the conviction.  On December 5, 2003, the United States Supreme Court denied Akinola's petition for a writ of certiorari.

On June 14, 2004, Akinola filed for relief under 28 U.S.C. § 2255.

Akinola is currently serving a 10 year custodial sentence imposed by the Superior Court of New Jersey, Essex County.  He was sentenced on September 10, 2002.  He is also serving a four year concurrent sentence imposed by the Superior Court of New Jersey, Ocean County on March 7, 2003.

### DISCUSSION

**A.  Movant Meets the Threshold Requirement for Relief Under Section 2255**

As a threshold matter, the movant must establish that he is a prisoner in custody under a sentence of a federal court.  28 U.S.C. § 2255 states in relevant part that:

> [a] prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A person subject to supervised release is a 'prisoner in custody' within the meaning of

3

28 U.S.C. § 2255 . . ." Goyal v. U.S., 103 F. Supp. 2d 802 (D.N.J. 2000).   In this case, Akinola

was sentenced by this Court to time served and three years of supervised release.  Therefore,

Akinola meets the threshold requirement of being a "prisoner in custody" under 28 U.S.C. §

2255.

**B.  Standard of Review**

The standard of review for a motion for relief under § 2255 is strict.  In order to gain

relief under § 2255, the movant must show that there was a:

> . . . fundamental defect which inherently results in a complete miscarriage
> of justice, [or] an omission inconsistent with the rudimentary demands of
> fair procedure.  It [must present] ... 'exceptional circumstances where the
> need for the remedy afforded by the writ of *habeas corpus* is apparent.'

United States v. Timmreck, 441 U.S. 780, 783 (1979).

**C.  Ineffective Assistance of Counsel**

Akinola asserts that his first attorney, Ms. Biancamanno, and his second attorney, Mr.

McInnis, were ineffective because they failed to argue for bail pending trial and that movant was

thus unlawfully detained.[1]  Akinola also asserts that defense counsel failed to request a

preliminary hearing, and that Mr. McInnis failed to integrate all charges in state and federal

courts pending against him.

In Strickland v. Washington, 466 U.S. 668, 687 (1984) the Supreme Court held that the

---

[1]Akinola also alleges that Ms. Biancamanno had a conflict of interest because she represented his co-defendant, Ricky Boyd, at a prior initial appearance where she was able to secure bail for Mr. Boyd.  From the Criminal Docket for Case #: 2:02-cr-0013-DRD-All, however, it appears that on May 25, 2001, Akinola appeared before the Magistrate Judge and was informed of his rights.  On that same day, after his initial appearance, Mr. McInnis was appointed as Akinola's counsel.  Therefore, any error resulting from Ms. Biancamanno's possible conflict of interest at Akinola's initial appearance would be harmless.

"proper standard for attorney performance is that of reasonably effective assistance" and imparted a two part test for determining if a claim for ineffectiveness of counsel can be sustained. First, petitioner must prove that "counsel made errors so serious that he was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id.   Secondly, the Court must determine whether "the deficient performance prejudiced the defense." Id.

Akinola claims that the representation by his first attorney, Ms. Biancamanno, was deficient because she failed to secure him bail and that this led to his "lengthy unlawful confinement." (Akinola's Reply Br. at 2).  This claim is now moot because Akinola has since pled guilty to the offense charged.  This did not constitute constitutional error in the context of Akinola's conviction because the attorney's error did not result in actual prejudice to the defendant.  See Brecht v. Abrahamson, 507 U.S. 619 (1993).  Actual prejudice can only occur when a constitutional error had "substantial and injurious effect or influence. . ." Id. at 631. Furthermore, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Hill v. Lockhart, 474 U.S. 52, 57 (1982).  The failure of Ms. Biancamanno to secure bail for Akinola had no effect on the judgment of the Court.  Akinola alleges that his subsequent attorney, Mr. McInnis, was ineffective because he failed to argue for bail until after Akinola had already pled guilty.  As stated above, however, failure to secure bail for Akinola had no effect on the judgment of the Court and does not give rise to a claim of ineffectiveness of counsel.

Next, Akinola claims that his defense counsel failed to request a preliminary hearing to determine probable cause in violation of Fed. R. Crim. P. 5(c), and that this led him to make "an uninformed and unintelligent decision to plead guilty."  (Akinola's Br. at 4).  In Gerstein v. Pugh,

420 U.S. 103, 114 (1975), the Supreme Court held that the "Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint on liberty following arrest." In the same case, the Court also stated that "although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." Id. at 119. Akinola failed to raise an objection before he pled guilty and was sentenced. He may not, therefore, raise the objection in this proceeding that there was no preliminary examination.

Finally, Akinola claims that his subsequent counsel, Mr. McInnis, failed to provide effective counsel because he failed to consolidate the state and federal claims pending against him. He claims that, "but for counsel's omissions and inactions, petitioner would not have pled guilty and instead would have exercised his constitutional rights to trial." (Akinola's Br. at 4). Even if the defense attorney had proposed consolidating the state and federal charges into one plea agreement, failure to do so does not amount to ineffectiveness of counsel. A defendant has no power to demand consolidation of state and federal claims into one prosecution. Furthermore, it is clear from the transcript of the plea allocution that Akinola was aware and understood that when he made his guilty plea the federal and state charges were not consolidated and that the state authorities had the right to take his plea into account and to consider it in connection with any state court proceedings. (Plea Transcript at 10-12).

Akinola contends that this failure to consolidate the federal and state charges against him subjected him to double jeopardy by being convicted in state and federal court for the same alleged conduct. This contention fails because, under the doctrine of dual sovereignty, federal

6

and state prosecutors can prosecute the defendant for the same crimes without violating double jeopardy.  "[I]t is well settled that there is no violation of the Double Jeopardy Clause in successive prosecutions for the same offense by the federal government and a state government." United States v. Gricco, 277 F.3d 339, 352 (3d. Cir. 2002).  See also Abbate v. United States, 359 U.S. 187, 194 (1959).  Defense counsel's failure to consolidate the federal and state claims against Akinola could not lead to his suffering double jeopardy and therefore cannot amount to ineffectiveness of counsel.

**D.  Claim of Duress in Entering Guilty Plea**

Akinola's assertion that he involuntarily entered his guilty plea under duress and was "unlawfully induced by virtue of [his] illegal detention" fails.  (Akinola's Br. at 4).  Akinola's incarceration was not unlawful and, as a matter of law, detention does not constitute duress. Furthermore, Akinola failed to raise the issue of duress during trial or on direct appeal.  When a petitioner has failed to raise an issue at trial or under direct review, he must establish cause for failure to raise the issue and also establish that due to his failure to raise the issue prejudice resulted.  See McClesky v. Zant, 499 U.S. 467 (1991).  In order to show cause, the movant "must first establish that 'some external impediment' prevented him from raising such a claim." Wise v. Fulcomer, 958 F.2d 30, 34 (3d Cir 1992) (quoting McClesky, 499 U.S. at 497).  Such claims could include interference by officials, unavailability of evidence, and ineffective counsel.  The movant must also show that the failure to raise this claim prejudiced the trial, and "worked to the actual and substantial disadvantage [of the movant] infecting his entire trial with error of constitutional dimensions."  Id. (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)), all of which Akinola has failed to do.

7

Akinola claims that Mr. McInnis rendered ineffective assistance of counsel during his Rule 11 plea hearing because he was under duress at the time of the plea agreement and did not voluntarily plead guilty.  In order for counsel to be declared deficient, the movant must demonstrate that counsel's advice was unreasonable and but for the advice the movant would not have otherwise entered into the plea agreement.  He must demonstrate that counsel's representation "fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  Cases in which ineffective assistance of counsel have been found on these grounds are cases in which the defendant is coerced by the defense attorney himself.  United States v. Davis, 239 F.3d 283, 287 (2d Cir. 2001) (the judgment of the district court was vacated when it was found that defendant's counsel threatened not to investigate the defendant's case if the defendant did not accept the Government's plea agreement).

Here, Akinola makes no such allegations of coercion by his defense counsel, but instead claims that "his guilty plea was induced not only by mere threats, but actual inaction and neglect on the part of his attorneys, in conjunction with his unlawful detention."  (Akinola's Reply Br. at 10).  Akinola's detention was not unlawful, he was made aware of his rights by the Magistrate Judge, and failure to secure bail had no effect on the judgement of the Court and does not give rise to a claim of ineffective assistance of counsel.  There is no evidence of threats or coercion by Akinola's counsel in this case.  Moreover, Akinola voluntarily, knowingly and intelligently entered a guilty plea in this case.  He had the opportunity to review his plea agreement and during his Rule 11 colloquy he was asked if he had "read the agreement carefully before [he] signed it," and Akinola answered that he had.  (Plea Transcript at 6).  Akinola answered in the affirmative that the agreement contained everything to which he and the Government had agreed and that no

threats had been made "to induce [him] to plead guilty or to sign the plea agreement."  (Plea Transcript at 6).  Therefore, Akinola cannot assert that he entered into the plea agreement under coercion or duress.  In order to obtain relief under § 2255, Akinola must show "exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent." Timmreck, 441 U.S. at 783.  Here, Akinola was not unlawfully confined and the record makes it clear that he was not under any threat when he entered a guilty plea and so has not demonstrated the "exceptional circumstances" necessary to have his sentence and conviction vacated or set aside for a claim of duress in entering his guilty plea.

**E.  Claim That There Was No Valid Waiver of Indictment**

Akinola's final claim is that he pleaded guilty to the information without a valid waiver of indictment as required by Fed. R. Crim. P. 7(b), and the Fifth Amendment to the U.S. Constitution.  The record leaves no doubt, however, that Akinola did knowingly and intelligently waive indictment.  On January 9, 2002 he both signed a waiver of indictment and waived his right to an indictment in open court.  The waiver plainly stated, "I, Kole Akinola...being advised of the nature of the charge(s), the proposed Information, and of my rights, hereby waive in open court on 1/9/02 prosecution by indictment and consent that the proceeding may be by information rather than by indictment."  (Waiver of Indictment).  Akinola claims that the waiver is invalid because the transcript of the plea allocution shows that he responded, "Yes sir," when the Court asked if he wished to enter indictment.  (Plea Transcript at 5).  In fact, it is clear from the transcript of the plea allocution that, despite this transcription error or the judge's slip of the tongue, Akinola expressed his desire to waive indictment.

9

The relevant portion of the plea transcript demonstrates that Akinola's response of "Yes sir" was an aberration from the rest of his responses and that he did indeed intend to waive his right to indictment:

> THE COURT: . . . have you discussed waiving indictment by grand jury with your attorney?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And do you understand that you have a right to indictment by grand jury?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And have any threats or promises been made to induce you to waive indictment?
>
> THE DEFENDANT: No.
>
> THE COURT: And do you wish to enter indictment?
>
> THE DEFENDANT: Yes sir.
>
> THE COURT: And, Mr. McInnis, do you see any reason why Mr. Akinola, should not waive indictment by grand jury?
>
> THE DEFENDANT: No, I don't.
>
> THE COURT: And I've been furnished with the waiver of indictment form, and I trust that you signed this form, Mr. Akinola?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: All right.  And I will sign it.  I've signed the waiver form also, and we'll file the waiver and the information itself.
>
> . . .
>
> THE COURT: I want to advise you, you have rights which you're giving up by pleading guilty.  You have the right to a trial by jury.  You would be presumed to be innocent until the Government proved you were guilty beyond a reasonable doubt.  At the trial, you would be represented by Mr. McInnis throughout.  He could make an opening statement to the jury.  He would cross-examine witnesses.  He could call witnesses on your behalf, make a closing argument to the jury, and generally insure [sic] that all your legal rights were protected.  Do you understand that by pleading guilty, you give upright [sic] to any kind of trial?
>
> THE DEFENDANT: Yes, sir.
>
> . . .
>
> THE COURT: And if you made a statement or confession to an FBI agent or an

10

Assistant United States Attorney, or other government official, you would have a right to a hearing to determine if the statements were voluntary or otherwise admissible. And do you understand you give up the right to that kind of a hearing by pleading guilty?

THE DEFENDANT: Yes, sir.

. . .

THE COURT: And, well, your pleading guilty here may affect the terms of probation in the state court.  It may determine what they will do.  They may cause you to take actions.  Do you understand that there's that possibility?

THE DEFENDANT: Yes, sir.

THE COURT: All right.

(Plea Transcript at 4-5, 8-9, 10).

In examining the above transcript, it is clear that Akinola did wish to waive indictment and that he did so knowingly and thoughtfully.   Akinola's answer of "Yes sir" to the Court's question of whether he wished to enter indictment appears to be a transcript error, but whether it was an error or not, there is no doubt from the rest of the transcript that he did wish to waive indictment and that he did so knowingly, and intelligently.  Additionally, the Court of Appeals found that the District Court properly accepted Akinola's guilty plea in affirming the Order of the District Court on Akinola's direct appeal.  U.S. v. Akinola, 66 Fed.Appx. 314, 316 (3d Cir. 2003).  As it is clear from the context of the plea that Akinola did wish to waive indictment, his claim of invalid waiver of indictment is without merit.

## **CONCLUSION**

Kole Akinola has not demonstrated sufficient grounds to vacate, set aside or correct his sentence under 28 U.S.C. 2255.  No evidentiary hearing is required because all material facts are

a matter of record and cannot be disputed.  Therefore, the motion will be dismissed without the issuance of a certificate of appealability.

/s/ Dickinson R. Debevoise

Dated: February 23, 2006                    DICKINSON R. DEBEVOISE

                                                    U.S.S.D.J.